IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| OUR COMMON WEALTH 670, ET AL.,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL MARINE FISHERIES SERVICE, ET AL.,<br><br>Defendants. | CIV. NO. 26-00469 JAO-KJM<br><br>ORDER GRANTING PLAINTIFFS' AMENDED MOTION FOR SUMMARY JUDGMENT (ECF NO. 27) |

**ORDER GRANTING PLAINTIFFS' AMENDED MOTION FOR SUMMARY JUDGMENT (ECF NO. 27)**

The United States Department of the Interior, through the Marine Minerals Administration ("MMA"), announced tentative plans to conduct a marine minerals lease sale on December 16, 2026 for up to six leases in two areas of seabed on the Outer Continental Shelf ("OCS") of the Commonwealth of the Northern Mariana Islands ("CNMI"), near Guam. Although for now these leases would only authorize the lease holder to conduct preliminary surveying activity, they may eventually allow the lease holder to develop marine minerals from polymetallic nodules collected from the ocean floor—so-called deep-sea mining. The Court understands that this lease sale is scheduled to be the second of its kind for deep-sea mining in the United States.

Plaintiffs Our Common Wealth 670, PåganWatch, Conservation Council for Hawai‘i, and Center for Biological Diversity (collectively, “Plaintiffs”) claim that the National Marine Fisheries Service (“NMFS”) and Secretary of Commerce Howard Lutnick (collectively, “Defendants”) violated the Endangered Species Act (“ESA”) when they signed off on MMA’s proposed lease sale by issuing a Letter of Concurrence that the lease sale was not likely to adversely affect listed species. More specifically, Plaintiffs contend that Defendants failed to sufficiently consider all the potential post-leasing effects of the entire proposed agency action. Plaintiffs move for summary judgment on their claim and seek vacatur of the Letter of Concurrence. *See generally* ECF No. 27 (“Motion for Summary Judgment”).

This Court has already addressed a functionally identical ESA challenge to another NMFS letter of concurrence regarding a different deep-sea mining lease sale that involved leases on the American Samoa OCS. In *Fa‘asao Amerika Samoa v. NMFS*, the Court granted the plaintiffs’ motion for summary judgment and vacated the agency’s letter of concurrence. *See Fa‘asao Amerika Samoa v. NMFS*, Civ. No. 26-438-JAO-KJM, 2026 WL 3548249 (D. Haw. Nov. 16, 2026) (“*FAS*”). Despite the Court’s ruling that NMFS violated the ESA, and the resulting vacatur of the letter of concurrence, MMA proceeded with that lease sale.

As in *FAS*, the Court concludes that NMFS wrongfully adopted MMA’s overly-narrow definition of the “agency action,” which limited the defined action

to the lease sale without any post-leasing activity. By doing so, NMFS only considered the preliminary effects of the lease sale and did not even attempt to consider the potential effects of post-leasing activities. For the reasons stated in *FAS*, NMFS's failure to consider the entire action violates the ESA.

The Court therefore GRANTS the Motion for Summary Judgment and VACATES the Letter of Concurrence.

Rather than repeat its order from *FAS*, the Court describes the facts surrounding NMFS' consultation in this case, and then simply adopts its reasoning from *FAS*.

## I. BACKGROUND

### A. Facts

MMA, formerly known as the Bureau of Ocean Energy Management[1], is the agency within the Department of the Interior responsible for leasing under OCSLA. *See* Secretarial Order 3451, Establishment of the Marine Minerals Administration (July 10, 2026) https://www.doi.gov/sites/default/files/document_secretarys_orders/so-marine-mineralsadministration_final_508.pdf. In November 2025, MMA began the

[1] The Administrative Record refers to the agency's prior name, or "BOEM" throughout. For readability, the Court uses MMA here to refer to the leasing agency regardless of the agency's name at the time of the action described.

process for issuing leases by initiating a Request for Information and Interest with a view toward potentially leasing for seabed minerals within the OCS east of CNMI. *See* C00018; 90 Fed. Reg. 50872 (Nov. 12, 2025). MMA received indications of interest from several companies, including about areas to the west of the CNMI. *See* C00178. After receiving those responses, MMA expanded the proposed leasing areas in the waters near CNMI and Guam. *See* C00018.

Ahead of any proposed lease sale, MMA drafted a biological assessment ("BA") to evaluate the potential effects of its proposed action—the issuance of up to six leases for seabed mining of marine minerals in the CNMI OCS—on ESA-listed species and their critical habitat. *See* C00019. The BA identifies the "action area" as "two areas, east and west of the CNMI where most of the Proposed Action will occur," as well as areas around Hawaiʻi and the west coast of the United States, from where vessels associated with the leases would travel. C00033–35; ECF No. 37 at 3 ¶ 4 (Pls. Concise Statement of Facts or "PCSF"). This large area is home to several dozen ESA-listed species including the blue whale, fin whale, sei whale, sperm whale, Hawaiian monk seal, as well as several types of sea turtles, sharks, and corals. *See* C00115–19, C00216–22.

The BA describes the "Proposed Action" as "issuing up to six leases for marine minerals in the CNMI OC[S]," although the leases "authorize preliminary activities only." C00019, C00023. By offering up to six commercial leases, MMA

sought to "enable[] the collection of data to inform potential future delineation of areas, testing, biological assessments, and evaluation of viability for commercial mineral development." C00020. The BA thus stated that "[t]he need for the Proposed Action is to help meet U.S. demand for critical minerals while reducing reliance on imports," and described how "[c]ritical minerals support key sectors such as consumer electronics, energy production, healthcare, transportation, and defense." *Id.*

Despite those ultimate motivations for the issuance of the leases, the proposed leases themselves would authorize the lease holders to conduct only preliminary activities such as geological, geophysical, bathymetric, and other surveys. *See* C00022–32. MMA explains that those activities "may indicate the presence of mineral resources and, in the case of geological sampling, may involve collection of limited samples of the seabed." *See* C00022.

Based on the initially narrow scope of activities the leases would allow, MMA defined the "agency action" as limited to the lease sales themselves, excluding the subsequent lease-facilitated development, i.e., mining, of deep-sea minerals. In so doing, MMA restricted its consideration of potential "effects of the action" on ESA-listed species to those caused by the preliminary activities. *See* PCSF ¶ 6; *see also* C00022–32. In other words, the BA did not include or otherwise analyze as "effects of the action" any effects from post-leasing conduct,

including exploration, testing, development, or actual mining on leases. PCSF ¶ 7. MMA maintains that future activities will be subject to future environmental review and consultation. *See* C00022.

Even limiting the effects analysis to the preliminary activities, the BA considered various stressors that could potentially harm the relevant species, including noise from surveys, aircraft, and vessels; vessel collisions; entanglement in mooring systems for buoys and deep-tow survey systems; disturbance to feeding or modified prey abundance; habitat disturbance; and release of pollutants and marine debris. *See* PCSF ¶ 8. After acknowledging that such stressors "may affect" the listed species, the BA nevertheless concluded that the lease sales and corresponding preliminary activities are "not likely to *adversely* affect" the ESA-listed species and critical habitat. *See* PCSF ¶ 9; C00114 (emphasis added). Because of the "not likely to adversely affect" determination, MMA could initiate informal rather than formal ESA consultation. *See* 50 C.F.R. § 402.14. The BA is dated July 2026. *See* C00011.

On July 22, 2026, NMFS received a request from MMA to initiate "expedited informal consultation" on the "proposed action to issue up to six leases for the purpose of commercial mining and authorize early-stage data collection, consistent with the limited and preliminary scope of activities evaluated in the

[BA]." C00213. On that same day, NMFS determined it had sufficient information to begin the expedited consultation. *See id.*

Like the BA, the Letter of Concurrence only considered potential effects from the authorized preliminary activities and not other post-leasing exploration, testing, development, or mining conduct. *See* C00213–25. As to the preliminary activities themselves, the Letter of Concurrence only explicitly discussed potential effects from acoustic operations. *See* C00215. For example, it stated: "To ensure the protection of ESA-listed species, all acoustic operations are strictly limited to Tier 4 sound sources as defined by (Ruppel et al. 2022) and de minimis." *See id.* On August 10, 2026, NMFS issued its Letter of Concurrence, concurring with the BA that the preliminary activities associated with the proposed issuance of the six leases "may affect, but [are] not likely to adversely affect" ESA-listed species in the action area. C00216. With that determination, NMFS "conclude[d] informal consultation under section 7 of the ESA." C00222.

On August 18, 2026, MMA published a Proposed Leasing Notice, announcing that the proposed lease sale was tentatively scheduled to be held on December 16, 2026. *See* ECF No. 37 at 12 ¶ 1 (Defs. Concise Statement of Facts of "DCSF"). As of November 5, 2026, MMA had not published the Final Leasing Notice, which it must do at least 30 days prior to holding any lease sale. *See* DCSF

¶ 3. The record does not indicate whether MMA has since published a Final Leasing Notice.

**B. Procedural History**

Plaintiffs initiated this case on September 8, 2026, ECF No. 1, and initially moved for summary judgment on October 2, ECF No. 19. The Court established a briefing schedule and set that initial motion for hearing. *See* ECF No. 21. The parties, however, agreed that "due to the significant overlap between the issues presented in this motion with the issues in the [then] pending motion for summary judgment in [*FAS*]," a hearing was unnecessary. *See* ECF No. 23 at 3–4. The parties also proposed a briefing schedule by which Plaintiffs would file an amended version of the initial motion. *See id.* at 2–4. The Court vacated the hearing and adopted the proposed schedule. *See* ECF No. 22.

Defendants filed the administrative record on October 16, 2026, ECF No. 26, and Plaintiffs filed their Motion for Summary Judgment on October 20, ECF No. 27. Defendants timely filed their Response in Opposition on October 30, ECF No. 34, and Plaintiffs filed their reply on November 5, ECF No. 36.

Based on the parties' agreement, and the substantial overlap with FAS, the Court elects to decide the Motion for Summary Judgment without a hearing. *See* LR 7.1(c).

## II. LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is a particularly appropriate tool for resolving claims challenging agency action," because "[i]n such cases the district court's role is not to resolve facts, but to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Ctr. for Biological Diversity v. Haaland*, 562 F. Supp. 3d 68, 76 (D. Ariz. 2021) (internal quotation marks and citations omitted).

The Administrative Procedure Act ("APA") governs whether an agency complied with the ESA. *See Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (en banc) (citation omitted). Under the APA, a court may set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A), (C). Agency action is arbitrary and capricious if:

> [T]he agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983).

## III. DISCUSSION

As noted, the legal issues in this case are functionally identical to those the Court resolved in *FAS*. Indeed, the Argument sections in the briefs are largely reproduced verbatim from *FAS*. The Court thus adopts its reasoning and conclusions from *FAS* and GRANTS Plaintiffs' Motion for Summary Judgment and VACATES the Letter of Concurrence. In short, the Court concludes that: NMFS had an obligation to scrutinize MMA's definition of the agency action; limiting the definition of the agency action to preliminary activities while excluding post-leasing activities was arbitrary and capricious; the Letter of Concurrence's failure to assess the potential effects of post-leasing activities violated the ESA; and vacatur of the Letter of Concurrence is the appropriate remedy for the violation. *See generally FAS*, 2026 WL 3548249.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for Summary Judgment and VACATES the Letter of Concurrence. The Court orders the Clerk to enter Judgment and close the case.

///

///

///

///

IT IS SO ORDERED.

DATED: Honolulu, Hawai‘i, November 25, 2026.

Jill A. Otake
United States District Judge

CIV. NO. 26-00469 JAO-KJM *Our Common Wealth 670 v. NMFS*; Order Granting Plaintiffs’ Amended Motion for Summary Judgment (ECF No. 27)